UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| RYAN SLOWIK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 3:22-CV-00188-DCLC-DCP |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH LAMBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 54] and Plaintiffs' Motion to Strike and/or Disregard [Doc. 89]. The Motions are fully briefed and ripe for resolution. For the reasons that follow, both Motions are **GRANTED IN PART** and **DENIED IN PART**.

**I. PROCEDURAL BACKGROUND**

Plaintiffs Ryan and Valerie Slowik, on behalf of themselves and their two minor children, A.S. and T.S. (collectively, "Plaintiffs"), sued Defendant Keith Lambert,[1] an Assistant Chief of Police for the University of Tennessee Police Department, claiming that he violated their constitutional rights when he approached "their" home and demanded to know why they were in "his" home. [Doc. 1]. The Complaint alleged that Defendant realized he had mistaken Plaintiff's house as his own and asked to speak with Mr. Slowik outside, who refused and told Defendant to leave [*Id.*, ¶¶ 42–44]. Defendant left for his house next door, and Plaintiffs departed and called

---

[1] Plaintiffs also sued Shelli Lambert, Keith Lambert's wife, but have voluntarily dismissed all claims against her [Doc. 20].

911 [*Id.*, ¶¶ 48–49]. Defendant then called his wife Shelli Lambert, who worked as captain with the Knox County Sheriff's Office ("KCSO") [*Id.*, ¶¶ 16, 50]. Mrs. Lambert picked Defendant up and left the scene before sheriff's deputies arrived [*Id.*, ¶¶ 50–53, 61]. Defendant reported the incident the next morning, after Mrs. Lambert confirmed with the KCSO that there was an open investigation [*Id.*, ¶¶ 57–58].

Plaintiffs filed a claim under 42 U.S.C. § 1983 (Counts I and III) and state law claims, including negligence (Count IV), negligence per se (Count V), assault (Count VI), false imprisonment (Count VII), invasion of privacy (Count VIII), intentional infliction of emotional distress (Count IX), and trespass (Count X). Defendant now moves for summary judgment [Docs. 54–55]. Plaintiffs opposed and moved to strike one of Defendant's supporting exhibits [Docs. 89, 91]. Defendant replied and responded to the motion to strike, to which Plaintiffs replied [Docs. 106–108].

## II. FACTS AND EVIDENCE

### A. Undisputed Facts

Plaintiffs' home was nestled in a cul-de-sac in the Hardin Valley area of Knoxville, Tennessee, outside of UTPD's jurisdiction [Doc. 1, ¶ 13; Doc. 55-1, 51:15; Doc. 90, pg. 12]. Plaintiffs' house has a façade with blue split siding, white trim, and a wraparound porch [Doc. 92-1, pg. 49]. Attached to the house is a garage with a grey stone façade and a white door [*Id.*]. Defendant purchased the house next door to Plaintiffs' home on July 22, 2019 [*See* Doc. 55-1, 34:20–34:22, 61:15–61:16]. On July 24, 2019, Defendant was the Assistant Chief of Police for the UTPD and was on call during the time of his interaction with Plaintiffs [Doc. 92-6, pg. 1]. On July 24, 2019, Lambert was operating an unmarked UTPD vehicle and was not in uniform [Doc.

2

92-6, pgs. 1–2; Doc. 90, pg. 6]. At no point during his encounter with Plaintiffs did he display a badge [Doc. 90, pgs. 7–8].

B.     **The Incident According to Plaintiffs**

At the time of the encounter with Lambert, Plaintiffs were on their way out of their house to attend T.S.'s football practice [Doc. 92-1, 23:15–23:20; Doc. 92-2, 7:11–7:21, 12:20–13:1; Doc. 92-3, pg. 11–12; Doc. 92-4, pg. 13].[2] Plaintiffs' car was parked inside the garage, the door of which was open [Doc. 92-1, 24:14–24:17, 39:25–40:6; Doc. 92-2, 12:1–12:7]. Inside the garage was a bicycle, sports equipment, a refrigerator, and toys [Doc. 92-1, 42:8–42:12; Doc. 92-4, pg. 7]. Mrs. Slowik and A.S. entered the garage first and saw Defendant walking towards the garage from his car, which was parked behind Plaintiffs' [Doc. 92-1, 24:11–24:13, 25:2–25:3, 39:23–39:24]. Defendant stopped at the "threshold" of the garage—"where the door would go up and down"—and began to yell "Get the [expletive] out of my house. Who the [expletive] are you? Get the [expletive] out of my house. I own this [expletive] house. You don't own this house. Get the [expletive] out of here." [Doc. 92-1, 25:5–25:25, 40:19–41:25; Doc. 92-2, 11:9–11:12; Doc. 92-3, pg. 7; Doc. 92-4, pgs. 7, 12; *see also* Doc. 92-2, 8:16, 8:24, 9:4–9:5; Doc. 92-3, pg. 15–16]. Mrs. Slowik responded that it was Plaintiffs' house, but Defendant continued to yell [Doc. 92-1, 25:14–26:1].

T.S. next entered the garage, followed shortly by Mr. Slowik [Doc. 92-1, 26:3–26:5; Doc. 92-2, 8:3–8:10, 12:9–12:11; Doc. 92-3, pgs. 6, 12, 18; Doc. 92-4, pgs. 7–9, 12]. Mr. Slowik and T.S. testified that Defendant continued to yell, "Get the [expletive] out of my house. I'm a cop" [Doc. 92-2, 14:1–14:2; *see* Doc. 92-3, pgs. 16, 20]. Defendant had a gun in his hand [Doc. 92-1,

---
[2]     The depositions of Mr. Slowik, T.S., and A.S. are not paginated [*See* Docs. 55-3, 92-2–92-4]. Citations to these depositions refer to the CM/ECF-generated page number on the bottom of the page.

3

26:11–26:14, 26:19–27:1; Doc. 92-2, 13:10–13:12; Doc. 92-3, pgs. 6, 12–14; Doc. 92-4, pgs. 10]. The gun was pointed either at or in the direction of A.S.'s shoulder [Doc. 92-1, 27:4–27:13 (stating that the gun was pointed "to the side of [A.S.'s] shoulder"); *Id.*, 55:18–56:24 (stating that the gun was pointed "at us" and towards A.S.'s shoulder); Doc. 92-2, 16:15–16:23 ("He had the gun pointed in the direction of my daughter."); Doc. 92-3, pg. 14 (stating that Defendant was "pointing it at my sister"); Doc. 92-4, pgs. 10–11 (stating that the gun was moving in a circular motion up and down near A.S.'s shoulder)]. Mr. Slowik stood between A.S. and Defendant [Doc. 92-1, 26:8–26:10, 27:12–27:13].

Soon thereafter A.S. fell to the ground, crying and screaming [Doc. 92-1, 27:21; Doc. 92-2, 14:10–14:15; Doc. 92-3, pg. 18]. In response, Defendant, apparently realizing his mistake, said, "I'm sorry . . . I'm a cop. I'm a cop." [Doc. 92-2, 14:25–15:1; *see also* Doc. 92-1, 27:24; Doc. 92-3, pg. 18]. Defendant asked to speak with Mr. Slowik, who declined and instructed Defendant to leave [Doc. 92-1, 27:24–28:1; Doc. 92-2, 15:8–15:11]. As Defendant began to leave, Mr. Slowik asked, "If you're a cop, where's your badge? Let us see your badge" [Doc. 92-2, 15:16–15:17; *see also id.*, 19:24–20:2]. Defendant repeated that he was a "cop," apologized, and left [Doc. 92-2, 15:18–16:12, 21:4–21:18]. Defendant reentered his car, backed out, and drove to the garage in the house next door [Doc. 92-1, 31:10; Doc. 92-2, 15:23, 17:25–18:2, 18:14–18:18]. Plaintiffs got in their car, drove away from the neighborhood, and called 911 [Doc. 92-1, 31:1:31:7; Doc. 92-2, 19:3–19:4; *see also* Doc. 92-1, 50:25–51:10 (estimating between 10 and 15 minutes between the incident and the 911 call)]. Plaintiffs then met with KCSO deputy sheriffs at a nearby elementary school [Doc. 92-1, 18:6–18:8; Doc. 92-2, 19:5–19:9].

### III. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as

4

to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant can discharge his burden by either affirmatively producing evidence establishing that there is no genuine dispute of material fact or pointing out the absence of support in the record for the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has discharged this burden, the nonmoving party can no longer rest on the allegations in the pleadings and must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The Court's role is to determine whether, viewing the facts and drawing all inferences therefrom in the light most favorable to the nonmovant, a reasonable juror could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255-56 (1986).

## IV. ANALYSIS

### A. Evidentiary Issues

#### 1. Declaration of Timothy Hutchison

Defendant's summary judgment motion relies in part on the "expert opinion" of Timothy Hutchison [Doc. 55, pgs. 4, 8]. Defendant attached Hutchison's Declaration, in which Hutchison states that he is a licensed private investigator and former Knox County Sheriff deputy retained "to evaluate the facts and circumstances as outlined in the Plaintiffs' Complaint and Mr. Lambert's actions on July 24, 2019." [Doc. 55-4, ¶ 1]. Hutchison states he prepared a report expressing the following opinions:

a. On July 24, 2019, when Keith Lambert approached the Plaintiff's home, mistakenly believing to be his own home, he was wearing a T-shirt, short pants, and was driving a plain car that had no police markings on it;

b. At no time did Mr. Lambert prohibit the Slowiks from leaving their home;

c. Mr. Lambert was trying to remove individuals from what he perceived to be his personal residence;

5

  d. Mr. Lambert did not perform any search to assist law enforcement in his actions;

  e. Mr. Lambert did not show his badge;

  f. Mr. Lambert did not attempt to seize the Slowiks;

  g. The Slowiks were never arrested, detained, or restrained by Mr. Lambert;

  h. Mr. Lambert did not have a gun with him issued by the [UTPD].

[Doc. 55-4, ¶ 4]. Hutchison's report was not included as an attachment to the Declaration.

  Plaintiffs move to strike or for the Court to disregard Hutchison's Declaration [Doc. 89]. Plaintiffs argue that Hutchison's opinions are inadmissible because no evidence was submitted to establish why Hutchison was competent to testify about the events of July 24, 2019 [Doc. 89, pgs. 4–6]. Plaintiffs argue that the Declaration is also inadmissible because none of Hutchison's opinions were based on his personal knowledge [Doc. 89, pgs. 2–4].

  Defendant responds that Hutchison does not need personal knowledge because he is being offered as an expert, not a fact witness [Doc. 107, pgs. 1–2]. Defendant further argues that any *Daubert* challenge Plaintiffs intended by way of their motion is untimely and therefore waived [Doc. 107, pgs. 2–3]. Alternatively, Defendant submits that the report, which Defendant "accidently left off [the D]eclaration," establishes Hutchison's competency[3] [Doc. 107, pg. 3]. Plaintiffs reply that their motion is timely because it is narrower than a *Daubert* challenge in that

---

[3]  In the attached report, Hutchison summarized Defendant's version of the facts and some of Plaintiffs' post-incident statements to KCSO [Doc. 107-1, pgs. 1–4]. Hutchison then proceeded to opine that "Keith Lambert did not violate the Slowiks' Fourth Amendment rights or 'Seize' them in any way" because: (1) Plaintiffs were free to leave; (2) Defendant did not act "under color of law" and (3) "[n]one of [Defendant's] action[s] constituted excessive force" [Doc. 107-1, pgs. 2, 4–7]. Hutchison also expressed his view on why the evidence did not support the Complaint's allegations that Defendant pointed a gun, that Mrs. Lambert picked Defendant up after the incident, and that Defendant was under the influence of alcohol or drugs, as well as why the factors outlined in *Graham v. Connor*, 490 U.S. 386 (1989), weighed in Defendant's favor [Doc. 107-1, pgs. 3–4, 7].

6

it contests admissibility for purposes of summary judgment, not trial [Doc. 108, pgs. 3–4]. Plaintiffs also argue that most of Hutchison's opinions in his report are improper legal conclusions [Doc. 108, pg. 3].

The Court agrees with Defendant that Plaintiffs' motion to strike and/or disregard is a *Daubert* motion in disguise. The Supreme Court in *Daubert* held that Federal Rule of Evidence 702 charges district judges with an obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Court also articulated a non-exhaustive list of factors for courts to consider when evaluating reliability. *Id.* at 593. Rule 702 was subsequently amended to reflect the *Daubert* factors. Fed.R.Evid. 702 Advisory Committee's Note to the 2000 amendment. Plaintiffs' motion invokes Rule 702 [Doc. 89, pgs. 2, 4–5]. Thus, it is partly a *Daubert* motion, the deadline for which expired on September 15, 2023 [Doc. 42, pg. 2]. And Plaintiffs have made no effort to show good cause or excusable neglect for their failure to timely make their *Daubert* challenge. *See* Fed.R.Civ.P. 6(b), 16(b)(4).

That said, the Court declines to consider Hutchison's Declaration and his expert report in deciding Defendant's summary judgment motion. Those portions of the expert report that merely summarize the parties' allegations and out-of-court statements are inadmissible hearsay. *See Fish Farms P'ship v. Winston-Weaver Co.*, 531 F. App'x 711, 712 (6th Cir. 2013); *see also Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay may not be considered on summary judgment."). Hutchison's factual findings about Defendant's attire, car, badge, intent, and gun and whether Plaintiffs were restrained or detained are inadmissible. And the remainder of Hutchison's opinion is inadmissible because it offers mere legal conclusions. *See DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 427–28 (6th Cir. 2006) (expert testimony

7

on whether force was excessive inadmissible). Moreover, whether Lambert was acting under color of state law is a legal conclusion and the Court is not in need of an expert opinion to make that judgment. *See Neuens v. City of Columbus*, 303 F.3d 667, 669 (6th Cir. 2002) (whether or not an officer-defendant was acting under color of state law is a legal question); *United States v. Buchanon*, 72 F.3d 1217, 1222 (6th Cir. 1995) (whether or not a seizure occurred is a legal conclusion). Accordingly, Plaintiffs' Motion to Strike and/or Disregard [Doc. 89] is **GRANTED** as to their request to disregard Hutchison's Declaration.

2. **Untimely Evidentiary Submissions**

Defendant argues that the Court should strike the Plaintiffs' summary judgment evidence because it was filed after the deadline [Doc. 106, pgs. 1–2; *see* Docs. 76, 92–93]. The deadline for Plaintiffs' brief in opposition was October 20, 2023 [Doc. 76]. The same deadline applied to "papers filed in support thereof" [Doc. 75, pg. 1; *see also* Doc. 21, ¶ 5.c; Fed.R.Civ.P. 6(c)]. Although Plaintiffs timely filed their response to Defendant's summary judgment motion [Doc. 91], they did not file their opposing evidence until October 23, 2023 [Docs. 92–93]. However, "it is within the discretion of the district courts whether to consider [summary judgment evidence] submitted in an untimely fashion." *Hooks v. Hooks*, 771 F.2d 935, 946 (6th Cir. 1985). And "it is well settled that decisions on the merits should not be avoided on the basis of mere technicalities." *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1446 (6th Cir. 1993) (internal quotation marks omitted). The Court therefore finds it inappropriate to strike particularly when Defendant does not claim to have been prejudiced.

3. **UTPD Report**

In opposing Defendant's summary judgment motion, Plaintiffs partly rely upon Lieutenant Donnie Ross's UTPD Internal Affairs Investigation report on the July 24, 2019, incident [Doc. 91,

pg. 4, 7–8, 10–11, 15, 17]. Lieutenant Ross authored the report on August 12, 2019, for Chief Troy Lane to determine whether Defendant's conduct violated any departmental policies [Doc. 92-1, pg. 50]. Lieutenant Ross's report includes summaries of his interviews with Defendant and Mr. and Mrs. Slowik, the investigative steps he took, and the body of evidence he considered [*See* Doc. 92-1, pgs. 50–58].

In the "Findings" section of the report, Lieutenant Ross stated that Defendant "should have realized his mistake much sooner" and "been able to view the scene in its totality and realize that he was not at the correct address"; "[i]nstead, he escalated the situation by exiting the vehicle with a holstered firearm in hand" [Doc. 92-1, pg. 60]. Lieutenant Ross purported to apply the "*Graham v. Connor*" factors to this incident: (1) "[i]t seems excessive that Lambert would have to hold a family of four at gunpoint for any belongings that may have been within the house"; (2) "it can be argued that the Slowiks were seized" upon seeing Defendant's gun; (3) Plaintiffs did "not seem to be an immediate threat"; (4) Plaintiffs "were not attempting to evade by flight when they were speaking with Lambert"; and (5) Defendant "could not see the totality of the situation," given that he only saw one minor [Doc. 92-1, pgs. 60–61]. And Lieutenant Ross noted that Defendant did not report the incident until after he found out a complaint had been filed with the KCSO and, had he timely reported, it "would have . . . cleared up any issues of potential use of alcohol or drugs" [Doc. 92-1, pg. 61]. Because Defendant did not, Lieutenant Ross stated that "potential use of drugs or alcohol and/or an acute stressor" were "potential factors that would make Lambert react to this situation the way that he did" [*Id.*].

Lieutenant Ross next determined whether Defendant violated 18 U.S.C. § 926C(b), Tenn. Code Ann. §§ 39-13-102–39-13-103, 39-13-302, and 39-14-405, and several UTPD General Orders and Human Resources ("HR") Policies [Doc. 92-1, pgs. 61–63]. Lieutenant Ross found no

9

violation of the federal and state statutes because no charges had been filed [Doc. 92-1, pgs. 61–62]. Lieutenant Ross last found several violations of UTPD General Orders and HR Policies [Doc. 92-1, pgs. 62–63].

Defendant argues that the Court should disregard the UTPD report on the July 24, 2019, incident as inadmissible hearsay [Doc. 106, pg. 2]. The argument has some merit. The report implicates the public records exception, which excludes from the hearsay rule "factual findings from a legally authorized investigation," provided "the opponent does not show that the source of the information or other circumstances indicate a lack of trustworthiness."[4] Fed.R.Evid. 803(8)(A)(iii) and (B). Those portions of the report that memorialize Defendant's out-of-court statements are admissible against Defendant as admissions. *See Jones v. Sandusky Cnty., Ohio*, 652 F. App'x 348, 356 (6th Cir. 2016). However, those portions of the report that merely summarize out-of-court statements from Mr. and Mrs. Slowik are inadmissible. *See* Fed.R.Evid. 805. Nor are his legal conclusions admissible. *See Tranter v. Orick*, 460 F. App'x 513, 515 (6th Cir. 2012). The remainder of the report is admissible to the extent it reflects factual findings by Lieutenant Ross, as opposed to legal conclusions. *See Jones*, 652 F. App'x at 356; *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989). Defendant's request to disregard the UTPD Internal Affairs Investigation report is therefore **GRANTED IN PART** and **DENIED IN PART**. The Court will consider only those portions of the report that are admissible.

4. **Interview Statements**

Plaintiffs' response to Defendant's summary judgment motion also relies on their post-incident statements to KCSO investigators and Lieutenant Ross [Doc. 91, pg. 10]:

---

[4] Because Defendant does not assert that the source of information was untrustworthy, the Court does not reach that issue.

(1) Mrs. Slowik's 911 call to KCSO, which took place at 6:15, ten minutes after the incident [Doc. 92-1, 51:4–51:10; Ex. 9]; (2) body camera footage of Plaintiffs' encounter with KCSO deputy sheriffs at the elementary school, which took place sometime after the 911 call [Doc. 92-1, 18:6–18:8; Doc. 92-2, 19:5–19:9; Ex. 1]; (3) Plaintiffs' interviews with KCSO investigators, all of which took place after 11:00 p.m. the night of the incident [Exs. 6–8]; (4) Lieutenant Ross's interview with Mr. and Mrs. Slowik, which took place on August 7, 2019 [Doc. 92-1, pg. 53; Ex. 10]. The Court declines to exclude these statements for purposes of ruling on the pending motion for summary judgment.

**B.   Federal Claims under 42 U.S.C. § 1983**

Plaintiffs' federal claims arise under 42 U.S.C. § 1983, which provides a private cause of action against any person who, under color of state law, deprives an individual of their rights under the Constitution. To succeed, Plaintiffs must prove: (1) that Defendant was acting under color of law at the time of the alleged constitutional deprivations; and (2) Defendant's conduct deprived Plaintiffs of a constitutional right. The Court begins with the first element.

Defendant argues that summary judgment should be granted on Plaintiffs' 42 U.S.C. § 1983 claims because there is no evidence that he was acting under color of state law. Defendant argues that nothing about his attire or vehicle indicated his status as a cop; he did not display a badge; he was outside of his jurisdiction; and none of his statements were consistent with an officer engaging in official duties [Doc. 55, pgs. 6–8; Doc. 106, pgs. 3–4]. Plaintiffs respond that a genuine dispute of fact exists as to whether Defendant acted under color of state law because Defendant's testimony was consistent with that of an officer investigating a suspected crime, Plaintiffs testified that he identified himself as a cop during the encounter, and Defendant brandished a firearm [Doc. 91, pg. 10–12].

11

A person acts under color of law when he "exercise[s] power possessed by virtue of state law and made possible only because [he] is clothed by authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks omitted). This is determined by reference to "the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty[.]" *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) (internal quotation marks omitted). Thus, an officer acts under color of law when he purports to exercise *official* authority, even if he does not have actual legal authority to act. *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004); *Stengel*, 522 F.2d at 441. Manifestations of official authority include "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations." *Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO*, 361 F.3d at 903.

It is undisputed that Defendant was in plain clothes, drove an unmarked car, did not display his badge, and did not appear to be performing any official duties when he approached Plaintiff's garage. When Defendant first saw Mrs. Slowik and A.S., Defendant began to yell "Get the [expletive] out of my house. Who the [expletive] are you?... I own this [expletive] house. You don't own this house. Get the [expletive] out of here." [Doc. 92-1, 25:5–25:25, 40:19–41:25; Doc. 92-2, 11:9–11:12; Doc. 92-3, pg. 7; Doc. 92-4, pgs. 7, 12; *see also* Doc. 92-2, 8:16, 8:24, 9:4–9:5; Doc. 92-3, pg. 15–16]. When Mr. Slowik entered the garage, Defendant continued to yell, "Get the [expletive] out of my house. I'm a cop." [Doc. 92-2, 14:1–14:2; *see* Doc. 92-3, pgs. 16, 20]. Plaintiffs allege that Defendant pointed his firearm in the direction of A.S. or moved it in a circular motion near A.S.'s shoulder. When A.S. fell to the ground crying, Defendant stopped and apologized, saying "I'm sorry … I'm a cop." [Doc. 92-2, 14:25–15:1; *see also* Doc. 92-1,

12

27:24; Doc. 92-3, pg. 18]. Mr. Slowik demanded that if Defendant were a cop, to show him his badge. But Defendant reentered his car, and he drove to his house next door.

Plaintiffs contend that because Defendant identified himself as a cop, he must have been acting under color of law when he threatened Plaintiffs with his firearm. But whether Plaintiffs understood Defendant as an officer is not determinative. The Sixth Circuit has cautioned that it is not "the clothing of the actor" that determines whether the officer acted under color of law. *Stengel*, 522 F.2d at 441. And if the clothing of an officer is not enough, then just saying "I'm a cop" would not be enough either. In other words, an officer may be in uniform—clearly identified as an officer—and nevertheless not be acting under color of law. The same applies here. That Defendant identified himself as a cop after he claimed Plaintiffs were in *his* house does not mean Defendant was acting under color of state law. Instead, the focus is on "the nature of the act performed." *Stengel*, 522 F.2d at 441. Here, the nature of the act performed is one of a private citizen allegedly committing an aggravated assault on an innocent family when he wrongfully believed they were in his house. He was there not because of a dispatch or otherwise called out to investigate any criminal behavior. Rather, he drove up to his neighbor's house – a house right next door to his house – and brazenly demanded they leave *his* house. He did not place them under arrest or otherwise "exercise power … made possible *only because* he is clothed by authority of state law." *West*, 487 U.S. at 49 (emphasis added). Instead, he acted as the homeowner – wrongful at that – when demanding that Plaintiffs leave what he believed to be his house. Moreover, his direction to Plaintiffs to leave was made not because he was a law enforcement officer but because he believed he owned the home. Accordingly, Plaintiffs have not shown Defendant was acting under color of state law. Plaintiffs' federal claims (Counts I-III) under 42 U.S.C. § 1983 are **DISMISSED**.

13

### C. State law claims

The Sixth Circuit has been clear as has the Supreme Court that where the district court dismisses all federal claims, the district court should decline to exercise supplemental jurisdiction over the state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 ("if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279–80 (6th Cir.2000); *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir.1993); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir.1992) (holding that "where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits."). Accordingly, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims, allowing Plaintiffs to pursue those in the proper state forum.

### V. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. 54] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' federal claims filed pursuant to 42 U.S.C. § 1983 (Counts I-III) are **DISMISSED**. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims so they are accordingly **DISMISSED WITHOUT PREJUDICE**. The remaining pending Motions [Docs. 57, 58, 62-69, 71, 73] **are DENIED AS MOOT**, and Objections to exhibit list [Doc. 111-112] are **DENIED AS MOOT**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge